# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| RALPH NEWCOMB and JESSICA NEWCOMB, as next friends for B.N.; TODD MATHIS and LESLEY MATHIS, as next friends for H.M., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:24-cv-00631 Judge Aleta A. Trauger |
| v. | ) ) | |
| WILLIAMSON COUNTY BOARD OF EDUCATION, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM

This case concerns two eighth-grade students at Williamson County schools, B.N. and H.M. The students' parents brought this case on their behalf. In August 2023, the students made comments that school officials interpreted as "threats of mass violence," which, pursuant to a then-new, since revised, provision of the Tennessee Code, resulted in a lengthy mandatory minimum suspension, later drastically reduced by the Superintendent. They were also arrested. The plaintiffs contend that their suspensions violated their substantive due process rights under the Fourteenth Amendment to the United States Constitution. Because the court finds no genuine issue of material fact and no constitutional violation, the Motion for Summary Judgment (Doc. No. 76) filed by defendant Williamson County Board of Education ("WCBOE") will be granted. In addition, the plaintiffs' Motion to Strike (Doc. No. 94) will be denied.

## I. PROCEDURAL HISTORY

In May 2024, the plaintiffs brought suit against Tennessee Governor Bill Lee, in his official capacity, and WCBOE. (Compl., Doc. No. 1.) In July 2024, the plaintiffs, with the addition of Julie

Wernert as next friend for C.W., filed an Amended Complaint, substituting Stacey Edmondson, in her official capacity as District Attorney for the 21st Judicial District of Tennessee, for Governor Lee. (*Contrast* Compl. at 1, *with* Am. Compl. ("FAC"), Doc. No. 20 at 1.) The FAC brought Fourteenth Amendment due process claims under 42 U.S.C. § 1983 and claims for negligent infliction of emotional distress under state law. (FAC ¶¶ 196–226.) Upon WCBOE's Motion to Dismiss (Doc. No. 24) and the plaintiffs' Notice of Dismissal of the state law claim (Doc. No. 36), the court dismissed all claims brought by Wernert and all claims against WCBOE, except for the plaintiffs' claims that their suspensions violated their rights to substantive due process under the Fourteenth Amendment. (Order, Doc. No. 45.) Thereafter, the plaintiffs—without Wernert[1]—filed the operative Second Amendment Complaint ("SAC") (Doc. No. 49). In response to the SAC, WCBOE filed an Amended Answer ("Answer") (Doc. No. 61.)

The SAC brings claims by the minor plaintiffs against WCBOE and Edmundson, under 42 U.S.C. § 1983, for violations of the plaintiffs' Fourteenth Amendment substantive due process rights arising from their suspensions. (SAC ¶¶ 186–207 (Count I, "42 U.S.C. § 1983 Violation of Fourteenth Amendment Substantive Due Process As-Applied Against [WCBOE] Arising Out of The Suspensions of B.N. and H.M."; Count II, "Violation of Substantive Due Process Under the Fourteenth Amendment As-Applied Against Stacey Edmondson In Her Official Capacity").) The plaintiffs seek declaratory relief, nominal damages, costs, and attorney's fees. (*Id.* at 38–39.) Upon

_____

[1] Wernert filed a separate, similar action against the same defendants. Compl., *Wernert ex. rel. C.W. v. Williamson Cnty. Bd. of Ed.*, No. 3:24-cv-01000 (M.D. Tenn. Aug. 16, 2024), ECF No. 1. The court dismissed the claim against Assistant District Attorney Edmonson. *Wernert*, (M.D. Tenn. July 18, 2025), ECF No. 58. The remaining parties then stipulated to dismissal just two weeks after WCBOE filed a motion for summary judgment, which the court did not decide. Joint Stipulation of Dismissal with Prejudice, *Wernert*, (M.D. Tenn. Sept. 29, 2025), ECF No. 69; WCBOE's Motion for Summary Judgment, *Wernert*, (M.D. Tenn. Sept. 15, 2025), ECF No. 60.

2

Edmondson's Motion to Dismiss (Doc. No. 58), the court dismissed the claims against her based on sovereign immunity. (Doc. No. 74.)

Now pending is WCBOE's Motion for Summary Judgment (Doc. No. 76), accompanied by a Memorandum (Doc. No. 78), Statement of Undisputed Material Facts (Doc. No. 77), and Affidavits (Doc Nos. 81-1 through 81-3),[2] to which the plaintiffs have filed a Response (Doc. No. 86), a Response to the defendant's Statement of Undisputed Material Facts ("PR") (Doc. No. 87), and a Counter Statement of Facts (Doc. No. 88), and in further support of which the defendant has filed a Reply (Doc. No. 97), an Affidavit (Doc. No. 97-1), and a Reply to Plaintiffs' Counter Statement of Facts ("DR") (Doc. No. 98).[3] Separately, the plaintiffs have filed a Motion to Strike as Hearsay Statement of Unidentified Student (Doc. No. 94), to which the defendant has filed a Response (Doc. No. 99).

## II.    FACTS[4]

Relevant to this case is a provision of the Tennessee Code that enumerates "zero tolerance" offenses by students, including, for example, bringing a firearm to school. Tenn. Code Ann. § 49-

---

[2] With leave of court (Doc. No. 82), two Exhibits to Affidavits have been filed under seal. (Doc. Nos. 80-1, 80-2.)

[3] The Local Rules no longer authorize non-moving parties to propound additional facts, nor the moving party to respond. (*Contrast* L.R. 56.01(c) (2020) ("In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried."), *and* L.R. 56.01(d) (2020) ("If the non-moving party has asserted additional disputed facts, the moving party must file a reply statement responding to each of the additional disputed facts."), *with* L.R. 56.01(c), (e) (May 15, 2025) (omitting references to additional facts or responses thereto). Without objection from either party, given the relatively recent amendment to the Local Rule, and seeing no prejudice, the court will consider the additional facts the plaintiffs have filed and the defendant's response.

[4] Unless noted otherwise, the facts are undisputed. The court draws the facts from the Answer, PR, DR, and evidence the parties have filed. The court views the evidence in the light most favorable to the plaintiffs, as the non-movants. *C.S. v. McCrumb*, 135 F.4th 1056, 1060 (6th Cir. 2025) (citing *Barr v. Lafon*, 538 F.3d 554, 561 (6th Cir. 2008)).

3

6-3401(g)(2)(A). Under Tennessee law, if a student commits a zero tolerance offense, the school must expel the student for one year, subject only to "modif[ication] on a case-by-case basis by the director of schools." *Id.* § 49-6-3401(g)(6)(B). In March 2023, a shooter killed three students and three staff at the Covenant School in Nashville. In April 2023, effective July 2023, subsection 3401(g)(2) was amended to add a fourth zero tolerance offense: "[t]hreaten[ing] mass violence on school property or at a school-related activity pursuant to § 39-16-517." 2023 Tenn. Pub. Acts, ch. 299 § 1 (adding Tenn. Code Ann. § 49-6-3401(g)(2)*(D)* (2023)).[5] Section 39 defines "mass violence" as "any act which a reasonable person would conclude could lead to the serious bodily injury, as defined in § 39-11-106, or the death of two (2) or more persons." Tenn. Code Ann. § 39-16-517(a)(1). Before the 2023–2024 school year, the defendant updated its written school policy to reflect the change in law. (Ans. ¶ 19.) And, while it is not strictly relevant to the remaining claims in this case, Tennessee law provides that a "person who recklessly . . . threatens to commit an act of mass violence on school property or at a school-related activity commits a Class E felony." Tenn. Code Ann. § 39-16-517(b)(1).[6]

---

[5] After the events giving rise to this case and others, the Tennessee Code was revised to allow schools more discretion over threats of mass violence. 2024 Tenn. Pub. Acts, ch. 882 § 1. The Code now provides that,

> [i]f a student threatens mass violence on school property or at a school-related activity pursuant to § 39-16-517, then the director of schools . . . shall require the student to submit to a threat assessment to determine whether the threat of mass violence made by the student was a valid threat. . . . If the director of schools . . . determines, based on the results of the threat assessment . . . , that the threat of mass violence made by the student was not a valid threat, then the student shall not be expelled for committing a zero tolerance offense, but may be suspended in accordance with this section.

Tenn. Code Ann. § 49-6-3401(g)(5).

[6] Recklessly making a threat of mass violence on school property was previously a Class A misdemeanor. Tenn. Code Ann. § 39-16-517(b) (2023). The provision was amended in May

4

In Fall 2023, B.N., fourteen, and H.M., thirteen, were eighth grade students at Page and Fairview Middle Schools, respectively. (Ans. ¶¶ 23, 134.) That August, the students made comments that, as reported to them, school officials interpreted as threats of mass violence. So their schools suspended the students for one year, as they believed was required by Tennessee law and district policy. The Superintendent later substantially reduced the punishments. Separately, each child was arrested and held in the Williamson County Juvenile Detention Center. (DR ¶¶ 10, 25.)[7]

<u>B.N.</u>

In 2022, B.N. moved with his parents from Wisconsin to Tennessee and, by Fall 2023, he was a starter on the Page Middle School football team. (Ans. ¶¶ 22, 31, 46.) During school lunch on August 10, 2023, B.N. and his friends were joined by another boy, who described his summer spent shooting guns with his grandfather. (DR ¶ 1.) After lunch, B.N. relayed the conversation to others. (*Id.* ¶ 3.) The parties dispute what B.N. said regarding guns on August 10, but, later that day, Page Middle School administrators received an email from a concerned parent regarding B.N. (PR ¶ 12.) According to the concerned parent's email, B.N. "said that he had a gun in his backpack

---

2024. 2024 Tenn. Pub. Acts, ch. 887 § 1 (deleting subsection (b) and adding, as relevant here, subsection (b)(1)).

[7] This is not the only Tennessee case concerning threats of mass violence at schools. In one case, the plaintiff alleges that Doe, a fourteen-year-old student, irritated by his classmate drumming a pencil on his desk, told him, "Stop tapping that pencil before I bomb you," as a result of which he was arrested, charged with "felony of threat to commit mass violence," and expelled for one year. First Am. Compl. ¶¶ 12, 37–38, *Doe ex rel. Doe v. Marion Cnty.*, No. 1:24-cv-00349 (E.D. Tenn. June 5, 2025) ECF No. 17. In another case, the plaintiff alleges that Doe, a thirteen year-old student with "Autism Spectrum Disorder and an Intellectual Disability," carried a stuffed bunny in his backpack but did not want anyone to look at it. Second Am. Compl. ¶¶ 5, 12–14. *Doe ex rel. Doe v. Hamilton Cnty. Dep't of Educ.*, 1:25-cv-00005 (E.D. Tenn. Aug. 6, 2025), ECF No. 27. So he told his class that "no one could look inside his backpack or else it would 'blow up' the school." *Id.* ¶ 12. As alleged, the school referred him to law enforcement and he was arrested, charged with a "felony of [threat of] mass violence," and suspended from school. *Id.* ¶¶ 27, 30–31, 51, 56.

and was going to shoot somebody. He then went on to say that he was going to get a bomb and blow someone up." (Lifsey Aff. Ex. 3, Doc. No. 81-2 at 19–20.) Early the next morning, B.N. and his parents met with Principal Eric Lifsey and Assistant Principal Chris Hawkins. (Ans. ¶ 56.) B.N. denied making threats and did not mention hearing anyone else discussing weapons or making threats. (PR ¶ 13.) School officials also interviewed several students who heard B.N.'s comments, and the students submitted written statements, full versions of which have been filed under seal. (*Id.* ¶ 14.)[8] One student wrote that, "B[redacted] said to a group of people that he had a gun in his backpack and he was going to shoot somebody. He also said that he was gonna get a bomb and blow someone up." (Doc. No. 80-1 at 2.) The same student continued, "[l]ater on [F]riday . . . he told [redacted] that he did not say that, but [redacted] said that he did say it. And B[redacted] said he knows he did. He also said it in the classroom and B[redacted] admitted to it." (*Id.*) Another student stated, "I was in class and we were just talking and then I heard him say something about a bomb like bombing the school[.] But I cannot remember correctly." (*Id.* at 3.) A third student wrote that, "B[redacted] say he had an AK and a bomb in his backpack and was going to shoot up the school as a joke." (*Id.* at 4.)

On August 14, B.N. was suspended for one year, pursuant to both Tennessee Code and district policy, and assigned to the Williamson County Alternative Learning Center ("ALC"). (DR ¶¶ 13, 17; PR ¶ 17.) B.N. appealed his suspension to WCBOE, which convened the Disciplinary Hearing Authority ("DHA") to hear the appeal. (PR ¶ 18; Lifsey Aff. ¶ 9.) The DHA determined that B.N. had made a threat of mass violence and affirmed his suspension. (PR ¶ 21.) B.N. then

---

[8] The plaintiffs object to the court's consideration of these students' statements and seek to strike the comments as hearsay. Further, the plaintiffs note that one student interpreted B.N.'s comments as a joke. (PR ¶ 14.) As the court will discuss below, the plaintiffs' Motion to Strike will be denied and the court will consider the fact that the school received the students' statements.

6

appealed the DHA's decision to Superintendent Jason Golden, who, according to an email he sent to B.N.'s mother, had "concluded that [B.N.] created a rumor of a threat of a weapon at school." (Ans. ¶ 120.) He continued, "I respect that [redacted] intended it as a joke, but that joke caused a disruption in school. Based on this, I've determined that he has served an appropriate amount of time at the ALC and should return Monday," B.N. having served a 30-day suspension. (*Id.*; PR ¶ 25.) The plaintiffs dispute that B.N.'s "alleged comments created any disruption." (PR ¶ 27.)

<u>H.M.</u>

H.M. was regarded as a model student at Fairview Middle School. (DR ¶ 22.) On August 22, 2023, she was part of a written "chat" conversation with other students, using her school's email service. (DR ¶ 23.) While discussing an upcoming event for which H.M. had volunteered to receive training to "combat bullying and harassment," another student "began teasing H.M. about looking Mexican due to her dark complexion." (*Id.*) One student asked in the chat, "what are you doing this Thursday?" to which H.M. responded—the defendant concedes, "in jest,"—"on Thursday we kill all the Mexicos [sic]." (*Id.* ¶ 24.) Because H.M. used the word "kill," the email system automatically alerted H.M.'s school about the conversation. (PR ¶¶ 33–34.) In an interview with Assistant Principals Alicia Mangrum and Luke Winstead, H.M. admitted making the statement regarding killing Mexicans (*id.* ¶¶ 36–37), but, according to Assistant Principal Winstead's notes from the meeting, H.M. "was adamant that she did not mean it." (Mangum Aff. Ex. 4, Doc. No. 81-3 at 20.) The school also interviewed some of the other students in the chat and received written statements from them. (PR ¶ 35.)

H.M. was suspended for one year and assigned to attend the ALC. (*Id.* ¶¶ 44, 49.) She appealed her suspension, but the DHA found that she had made a threat of mass violence and affirmed the suspension. (*Id.* ¶¶ 46–47.) She appealed the DHA's decision to Superintendent

7

Golden, who determined that H.M. had not "intend[ed] her comments as a threat," but found her comments "inappropriate" nonetheless. (*Id.* ¶¶ 48, 51.) Superintendent Golden determined that 20 days at the ALC was a sufficient punishment and allowed her to return to school. (*Id.* ¶¶ 51–52.)

### III.    LEGAL STANDARD – RULE 56(a)

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). But the defendant is not entitled to judgment "if there is evidence in the record 'on which the jury could reasonably find for the plaintiff.'" *Huang v. Ohio State Univ.*, 116 F.4th 541, 555 (6th Cir. 2024) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original). "[A] fact is 'material' within the meaning of Rule 56(a) if the dispute over it might affect the outcome of the lawsuit under the governing law." *O'Donnell v. City of Cleveland*, 838 F.3d 718, 725 (6th Cir. 2016) (citing *Anderson*, 477 U.S. at 248). Thus, a factual dispute that is irrelevant under applicable law is of no value in defeating a motion for summary judgment. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine.'" *Anderson*, 477 U.S. at 248.

The party bringing the summary judgment motion has the initial burden of identifying portions of the record—including "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials"—that it believes demonstrate the absence of a genuine dispute over material facts. Fed. R. Civ. P. 56(c)(1)(A). Then the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619,

628 (6th Cir. 2018) (quoting *Anderson*, 477 U.S. at 250). Credibility judgments and the weighing of evidence are improper. *Huang*, 116 F.4th at 555 (citing *Anderson*, 477 U.S. at 255).

Local Rule 56.01(e) governs responses to statements of facts. In relevant part, the Rule requires the respondent to either (a) agree that the fact is undisputed, (b) agree that the fact is undisputed for the purposes of summary judgment only, or (c) dispute the fact on a basis permitted by Federal Rule of Civil Procedure 56(c). L.R. 56.01(e)(1). Rule 56(c) permits parties to object on the basis that the material cited to "support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *see also* Fed. R. Civ. P. 56(c)(4) (providing that affidavits and declarations must "set out facts that would be admissible in evidence").

## IV. DISCUSSION

### A. Motion to Strike

The defendant filed as attachments to its Motion for Summary Judgment several Affidavits, including that of Eric Lifsey, Principal of Page Middle School, where B.N. was a student. (Lifsey Aff., Doc. No. 81-2.) Attached to Principal Lifsey's Affidavit is a blank version of Exhibit 4. (Doc. No. 81-2 at 21), which was filed under seal. (Doc. No. 80-1.) Sealed Exhibit 4 includes statements other students submitted to the school about B.N.'s remarks.[9] (*See* Lifsey Aff. ¶ 6 (describing Ex. 4).)

---

[9] The Exhibit was filed under seal to prevent anyone from identifying the students by their handwriting. (Mot. to File Under Seal, Doc. No. 79 at 1.) Accordingly, the court has referred to the students' written submissions in this Memorandum even though they are under seal. And both parties quote from the sealed Exhibit. (Lifsey Aff. ¶ 6; Doc. No. 94 at 2.)

9

The plaintiffs have filed a Motion to Strike as Hearsay Statement of Unidentified Student. (Doc. No. 94.)[10] The plaintiffs argue that one student's statement (Doc. No. 80-1 at 2), includes two sentences that constitute inadmissible hearsay and ask that "these two sentences be stricken from this statement," and further "object to their consideration as part of the record for summary judgment based on Rule 56(c)(4)." (Doc. No. 94 at 2.) The defendant filed a Response, in which it argues in the alternative that the Motion to Strike is procedurally improper and that the at-issue statements are not hearsay. (Doc. No. 99 at 2–4.) The plaintiffs did not file a reply brief. Because the at-issue statements are not hearsay, the court puts to the side the propriety of a Motion to Strike portions of an affidavit.[11] And in any case, even if the court would not *strike* portions of an affidavit, it could decline to consider them, as the plaintiff requests, seemingly in the alternative. (Doc. No. 94 at 2.)

The defendant argues that, because the students' comments contained within Exhibit 4 are not hearsay the court should not ignore them.[12] Hearsay is inadmissible in a trial unless an

---

[10] The plaintiffs' Motion to Strike is quite brief and unaccompanied by a memorandum, even though one was required. L.R. 7.01(a)(2) ("Every motion requiring a determination of law must be accompanied by a memorandum of law citing supporting authorities.").

[11] The court notes, however, that while the Federal Rules of Civil Procedure "do not contemplate motions to strike documents other than pleadings," courts "may make use of their inherent power to control their dockets . . . when determining whether to strike documents or portions of documents other than pleadings." *Royles v. Trihealth, Inc.*, No. 1:22-cv-260, 2024 WL 3926226, at *4 (S.D. Ohio Aug. 22, 2024) (citations modified). *Accord Carey v. Foley & Lardner LLP*, 577 F. App'x 573, 578 (6th Cir. 2014) ("[W]e review a district court's decision to deny a motion to strike an affidavit or declaration for abuse of discretion." (citing *Aerel , S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 906 (6th Cir. 2006))).

[12] Rule 56(c)(4), which the plaintiffs cite for support, provides that affidavits must "set out facts that *would* be admissible in evidence." Fed. R. Civ. P. 56(c)(4) (emphasis added). Thus, what matters is the "admissibility of a fact at trial, not necessarily the admissibility of the fact in the specific form presented at the time of the summary judgment motion." *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018) (citing *Mangum v. Repp*, 674 F. App'x 531, 536–37 (6th Cir. 2017)). Whether the student's statement, as presented, is hearsay in its present form, does not determine whether the court may consider it.

10

exception applies. Fed. R. Evid. 802. Hearsay is a statement that a "party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). In this case, the defendant points out that it has not submitted the students' statements to prove truth of the matter asserted, but instead "to show that there was a reasonable basis to suspend B.N." (Doc. No. 99 at 4.) That is, the students' statements are offered to prove that the school received multiple reports that B.N. made threats, not that he in fact did. The defendant is correct on this point, and the plaintiffs have not responded. Accordingly, the court will neither strike nor ignore portions of Exhibit 4, and the plaintiffs' Motion to Strike will be denied.

### B.  Substantive Due Process

Each minor plaintiff has one remaining claim in this case—that the defendant violated their Fourteenth Amendment due process rights by suspending them for several weeks. The court need not decide whether either student in fact made a threat or whether the school's response was in fact required by Tennessee law or merited by the circumstances. The court will decide only whether the students' punishments constituted a constitutional violation. The court finds that they did not.

#### 1.  *Immunity*

The Eleventh Amendment to the U.S. Constitution bars suit against the state and its departments. *Adams v. Calhoun Cnty.*, No. 18-1867, 2019 WL 3501815, at *2 (6th Cir. Apr. 24, 2019) (citations omitted). The defendant argues, for the first time, that it is entitled to Eleventh Amendment immunity for its decision to suspend the students because it was "complying with state mandates that afford no discretion" and therefore was acting as an arm of the state. (Doc. No. 78 at 10 (quoting *L.E. by Esquivel v. Lee*, 728 F. Supp. 3d 806, 828 (M.D. Tenn. 2024) (Crenshaw, C.J.)).) When defendants do not raise immunity as a threshold issue, the court may decide the case on the merits. *Does v. Whitmer*, 69 F.4th 300, 305 (6th Cir. 2023) (noting that the court was "free

11

to address the merits before sovereign immunity" because the defendants raised the issue in a Rule 12(b)(6) motion, rather than a Rule 12(b)(1) motion). Here, the defendant raises immunity for suspending the students for the first time in its Motion for Summary Judgment.[13] In its discretion, therefore, the court will discuss the merits first.

### 2. The Merits

To succeed on a claim under Section 1983, a plaintiff must prove a deprivation of a constitutional right by a person acting under color of state law. *Susselman v. Washtenaw Cnty. Sheriff's Off.*, 109 F.4th 864, 870 (6th Cir. 2024), *cert. denied*, 145 S. Ct. 1901 (2025).[14] The plaintiffs allege violations of their substantive due process rights under the Fourteenth Amendment, which provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. One component of "due process of law," relevant here, is substantive due process, which "bars certain government actions regardless of the fairness of the procedures used to implement them." *Guertin v. Michigan*, 912 F.3d 907, 918 (6th Cir. 2019) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

To succeed on a substantive due process claim, the plaintiffs must show the deprivation of a constitutionally protected interest and that "the government's discretionary conduct that deprived

---

[13] The defendant expressly limits its claim of immunity to its decision, as it maintains was required by Tennessee law, to suspend the students. (Doc. No. at 78 at 10 n.5.) The court earlier rejected WCBOE's immunity argument, brought in its Rule 12(1)(b) Motion, which related only to its decision to report the alleged threats to law enforcement. (Memorandum, Doc. No. 44 at 16–17.)

[14] The defendant is a "person" for purposes of Section 1983. *See Hicks v. Benton Cnty. Bd. of Educ.*, 222 F. Supp. 3d 613, 623 (W.D. Tenn. 2016) ("A . . . county board of education, is a 'person' within the meaning of § 1983 and, therefore, may be subject to liability in actions brought thereunder." (citations omitted)). The plaintiffs do not argue otherwise. Municipal liability requires an "underlying constitutional violation." *Wayne County*, 142 F.4th 828, 844 (6th Cir. 2025) (citing *Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2023)). Because the court finds no constitutional violation, it will not discuss the requirements for municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

12

that interest was constitutionally repugnant." *Halasz v. Cass City Pub. Schs.*, 162 F.4th 724, 736 (6th Cir. 2025) (quoting *Guertin*, 912 F.3d at 922), *rehearing en banc denied*, No. 25-1492, 2026 WL 1002139, at *1 (6th Cir. Feb. 17, 2026). The defendant does not deny that the students were deprived of their interest in attending school, so the issue is whether suspending the students was "constitutionally repugnant." As the Sixth Circuit has recently explained, courts have found substantive due process violated where the action was "'willful and unreasoning,' 'shocks the conscience,' was 'extremely irrational,' or lacks 'some factual basis.'" *Halasz*, 162 F.4th at 736–37 (quoting *Johnson v. City of Saginaw*, 980 F.3d 497, 513 (6th Cir. 2020)).

The Due Process Clause provides "heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citations omitted). But the "right to attend public school is not a fundamental right for the purposes of due process analysis." *Seal v. Morgan*, 229 F.3d 567, 575 (6th Cir. 2000) (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33–37 (1973)). When a government action does not affect fundamental rights or liberty interests and does not involve suspect classifications–and none are alleged in this case—it will be upheld if it is "rationally related to a legitimate state interest." *Id.* (citing *Vacco v. Quill*, 521 U.S. 793 (1997)).

The defendant argues that neither student's punishment violated the Fourteenth Amendment. (Doc. No. 78 at 14–21; Doc. No. 97 at 3–5.) Both students' comments, as reported to them, the defendant argues, met the statutory definition of a threat of mass violence, and therefore the initial year-long suspension was required under state law. (Doc. No. 78 at 17–18.) Moreover, the defendant argues, both students' final punishments of weeks-long suspensions are rationally related to their conduct. (*Id.* at 19–20.) The plaintiffs respond that, because school officials concluded that neither B.N. nor H.M. "pose[d] any credible threat of mass school

13

violence," the decision to suspend them for making threats is "arbitrary and capricious" because the suspensions bore no rational relationship to the students' actions. (Doc. No. 86 at 18–22.)

A recent Sixth Circuit decision, issued after briefing concluded in this case, is directly on point.[15] In *Halasz v. Cass City Public Schools*, the school district expelled an eighth-grade student, H.H., for making a threat of violence. *Halasz*, 162 F.4th. Other students contended that H.H. made comments about bringing a gun to school. According to one student, H.H. "said that he had guns and that if he brought them to the school, nobody would do anything about it." *Id.* at 730. Another student "heard H.H. say something about him bringing a fake but metal gun to school." *Id.* A third student "claimed that they 'heard him say something about having a gun in his bag.'" *Id.* And a fourth student "testified that she heard H.H. state that 'he was thinking about bringing a gun to school.'" *Id.* Two students and two parents reported H.H.'s alleged remarks to school officials, who investigated, including by interviewing H.H. and searching him and his backpack and locker. *Id.* at 730–31. H.H. "denied making any threats or comments about possessing a gun on campus," and the school found no gun. *Id.* As the district court put it, H.H.'s "precise remark is disputed," but "it is undisputed that at least four students perceived the remark as a threat and reported it to their parents and the [school] Administration." *Halasz ex rel. H.H. v. Cass City Pub. Schs.*, No. 1:22-cv-13158, 2025 WL 1490055, at *1 (E.D. Mich. May 23, 2025), *aff'd sub nom. Halasz v. Cass City Pub. Schs.*, 162 F.4th 724 (6th Cir. 2025). The Michigan State Police searched H.H.'s house and found no guns, *Halasz*, 162 F.4th at 731, and, according to the superintendent, determined that there was "not . . . enough information to prosecute" H.H. *Halasz ex rel. H.H.*, 2025 WL 1490055, at *3. Nevertheless, the school determined that H.H. violated the district's

---

[15] The defendant initially cited the opinion of the district court (*see, e.g.*, Doc. No. 78 at 15–16), and then filed a Notice of Supplemental Authority regarding the Sixth Circuit's affirmance (Doc. No. 100), to which the plaintiffs did not respond.

code of conduct "by making threatening remarks." *Halasz*, 162 F.4th at 731. As a result of the violation, the school issued H.H. eight "disciplinary points for 'gross misbehavior,'" which, when added to points from preexisting infractions, triggered a referral to the district's school board for an expulsion hearing, which resulted in a 180-day expulsion. *Id.* at 731–32.

H.H.'s parents brought various claims on his behalf against multiple defendants, including a claim under Section 1983 against the school district for expelling him in violation of the Fourteenth Amendment's due process clause. *Halasz ex rel. H.H.*, 2025 WL 1490055, at *6. The district court granted summary judgment for all defendants on all counts. *Id.* at *22. The Sixth Circuit affirmed. *Halasz*, 162 F.4th at 738. In relevant part, the Sixth Circuit held that the school district did not violate H.H.'s substantive due process rights by expelling him for 180 days. First, the court found that his expulsion did not "shock the conscience" because it neither infringed on the "decencies of civilized conduct," nor was "so brutal and so offensive to human dignity," nor did it interfere "with rights implicit in the concept of ordered liberty." *Id.* at 737 (quoting *Guertin*, 912 F.3d. at 923). Second, the court determined that the punishment was not arbitrary in a constitutional sense, which would mean that it "lacks any rational basis." *Id.* (citing *Am. Express Travel Related Servs. Co. v. Kentucky*, 641 F.3d 685, 689 (6th Cir. 2011)). The court explained:

> Here, the offense was H.H. making a remark about having a firearm at school, and the punishment was a 180-day expulsion. There was a rational relationship between the two, especially given the heightened sensitivity to such comments at the time. That H.H. did not possess a firearm, bring one to school, or immediately endanger another student does not alter our conclusion either, even when viewing the evidence in the light most favorable to the Halaszes.

*Id.*

Similar reasoning requires the same result in this case. In this case, based on reports from other students (in B.N.'s case) and on a written transcript (in H.M.'s case), the students' schools determined that they made threats of mass violence, as defined under state law. School officials

15

believed that state law required them to suspend the students for one year, which they initially did. On appeal, the Disciplinary Hearing Authority agreed. The Superintendent, exercising his discretion, as permitted by state law, found that much lighter punishments were appropriate, at least in part because the students did not pose a threat to others. The plaintiffs urge the court to find the ultimate, weeks-long suspensions unconstitutional, in part because the students posed no threat. But as the court explained in *Halasz*, "whether [they] posed a real physical danger to [their] fellow students is independent of whether [they] made a comment that sounded like a threat. There is no question that such a comment in this context could substantiate a safety risk." *Id.* at 735 (discussing the plaintiff's procedural due process claim).

The plaintiffs attempt to distinguish *Halasz*. They note that the events in *Halasz* took place mere days after a nearby school shooting and that the student made the remark in question after a school assembly discussing that shooting. (Doc. No. 86 at 21 (discussing the district court opinion).) The plaintiffs note that "[a]t least four students perceived the remark as a threat and reported it to their parents and the administration." (*Id.*) And, "[g]iven the exigencies" of *Halasz* "and the incident's temporal nexus to the recent shooting," the plaintiffs argue that "the school's actions in suspending H.H. were not only rational, but compelling." (*Id.*) The court recognizes that there are minor factual differences between *Halasz* and this case, including that H.H. was suspended for 180 days and the plaintiffs here for only several weeks and that a local school shooting occurred close in time to H.H.'s suspension. The court is not convinced that these slight differences between the cases could render H.H.'s 180-day suspension not only constitutional, but "compelling," while weeks-long suspensions for the plaintiffs in this case not only misguided, but constitutionally repugnant. Moreover, while the plaintiffs attempt to distinguish cases the

16

defendant has cited (Doc. No. 86 at 20–22), they do not cite any case finding that a weeks-long suspension constituted a substantive due process violation.

As the Supreme Court has stated, "[i]t is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion." *Wood v. Strickland*, 420 U.S. 308, 326 (1975), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Thus, "[i]n the context of school discipline, 'a substantive due process claim will succeed only in the rare case when there is no rational relationship between the punishment and the offense.'" *Halasz*, F.4th at 737 (quoting *Seal*, 229 F.3d at 575). This is not one such rare case. The court finds no constitutional violation.

## V.     CONCLUSION

The court finds that the suspensions in this case did not violate the Fourteenth Amendment, which sets an extremely high bar. Indeed, substantive due process "does [not] offer recourse for every wrongful action taken by the government." *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 141 F.4th 796, 805 (6th Cir. 2025) (quoting *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012)), *cert. denied sub nom. Kanuszewski v. Shah*, No. 25-830, 2026 WL 795148 (U.S. Mar. 23, 2026). For the foregoing reasons, the defendant's Motion for Summary Judgment (Doc. No. 76) will be granted and the plaintiffs' Motion to Strike (Doc. No. 94) will be denied.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge

17